SWIFT LUMBER & FUEL COMPANY, APPELLEE, v. ADOLPH HOCK, APPELLANT.

FILED NOVEMBER 10, 1932. No. 28300.

*M. M. Schmidt,* for appellant.

*Burkett, Wilson, Brown, Wilson & Van Kirk, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

Plaintiff sued to recover balance due on an account for fuel oil and other items furnished defendant. Defendant confessed the amount, and in a cross-petition set up a counterclaim, in which he sought recovery on contracts between plaintiff and one Buckstaff, which he alleges were made for defendant's benefit. After defendant had introduced his evidence and rested, on motion of plaintiff the court directed a verdict against defendant on his counterclaim and for plaintiff for the amount confessed by defendant. Defendant has appealed.

The record discloses that Buckstaff was the owner of two apartment buildings in the city of Lincoln which were heated by coal-burning furnaces. June 25, 1929, he entered into contracts with plaintiff, whereby the latter agreed to install two oil burners in each apartment house, one for the heating of water for domestic use in each of

the buildings, the other for heating building. The contracts between plaintiff and Buckstaff were in the form of written communications which were accepted by Buckstaff. We quote the pertinent part of the communications:

"With an Electrol properly installed in your furnace and burning fuel oil, you can heat your home or place of business, cleanly, quietly, safely, absolutely automatically, as cheaply as you can with coal and for 30 per cent. less than it will cost you for oil in any pot type oil burner. The Electrol is absolutely guaranteed. We are inclosing a copy of our guarantee."

The guaranty inclosed is in the following language:

"We guarantee the Electrol Fuel Oil Burner to heat your home or place of business cleanly, quietly, safely and as cheaply as you can with coal.

"To please you in economy, in performance and in every way.

"If it does not do so and you advise us at the end of the first heating season, we will remove it, install your old heating plant as we found it and refund all money paid us in full.

"(Signed) Swift Lumber & Fuel Co."

The oil burners were installed, and some two months after these contracts were made, Buckstaff leased the two apartment houses to the defendant. Defendant, being desirous of knowing the cost of heating, made inquiries of Mr. Buckstaff and the coal dealers from whom fuel had been purchased for the two preceding years, and ascertained that the cost of coal ran from $508 to $540 a season for each building. Defendant claims that the contracts between plaintiff and Buckstaff, together with the guaranties, were submitted to and considered by him in entering into the leases with Buckstaff for the two buildings. He also contends that a salesman for the plaintiff was present when he was negotiating with Buckstaff for the leases of the properties, and that he, in effect, repeated the terms of the contracts and guaranteed and

32

assured defendant that plaintiff would carry out its contracts and make good its guaranty. For the heating season of 1929 and 1930 defendant purchased fuel oil from plaintiff. Defendant alleged, and offered testimony to prove, that the cost of oil for the heating seasons from 1929 to 1931 was largely in excess of the cost of the coal for the two previous years. He claimed that, pursuant to the contracts between plaintiff and Buckstaff, defendant was entitled to recover upon these contracts the difference between the cost of the coal and the cost of the fuel oil.

It may be observed that there is no evidence in the record with reference to the cost of coal for the years 1929 to 1931; nor is there any evidence as to what the janitor's services would cost for stoking the furnaces and removing the ashes; so that, in any event, there is no basis for comparing the cost of heating by oil with the cost of heating by coal. The cost of coal for the two years ending in June, 1929, would not be a proper basis for determining its cost for the two succeeding years. Moreover, it is a matter of which every one is cognizant that some winters are mild and comparatively warm, as compared with other seasons, and that the mild seasons require less fuel than the colder ones. What was the character of the several heating seasons as to mildness is not disclosed.

This and other courts have frequently held that, where one makes a contract or promise to another for the benefit of a third person, such third person may maintain an action upon the promise, although the consideration does not move directly from him. In order that a third person may maintain an action upon a contract to which he is not a party, it must be shown that it was made for his protection and benefit, or for the protection and benefit of a class to which he belongs.

In 13 C. J. 709, it is said: "By the weight of authority the action cannot be maintained merely because the third person will be incidentally benefited by performance of

the contract; he must be a party to the consideration, or the contract must have been entered into for his benefit, and he must have some legal or equitable interest in its performance."

In the instant case the contracts were made between plaintiff and Buckstaff when the latter was operating his apartment buildings. There was no suggestion in the contracts that Buckstaff intended to lease the buildings; nor is there any suggestion in the contracts that the provisions thereof were made for the benefit of any one other than Buckstaff. Unless it is proved that the contracts between plaintiff and Buckstaff were made for the benefit of third persons, a third person cannot bring an action thereon. There is a total failure of proof in this respect.

Defendant further alleged and testified that a salesman for plaintiff was present when defendant was negotiating with Buckstaff for the leasing of the buildings, and made substantially the same representations. There is not shown any contractual relation between plaintiff and defendant in this respect, and no consideration was paid by defendant to plaintiff; nor is it disclosed that the salesman had any authority whatsoever to make any such representations that would be binding upon the plaintiff.

In no view of the case as presented was defendant entitled to recover on his counterclaim. The court properly directed a verdict for plaintiff and against defendant on his counterclaim.

JUDGMENT AFFIRMED.